UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| Philip M. Harry, on behalf of himself and all others similarly situated, | Court File No. _____ |
| Plaintiff, | |
| v. | **CLASS ACTION COMPLAINT** |
| HSBC Mortgage Services, Inc., | |
| Defendant. | |

## INTRODUCTION

1.      The men and women who serve in our military leave behind family, friends and the comforts of civilian life when they answer our country's call to duty.  They also interrupt jobs and careers, and the effect on their financial security can be extreme.  The Servicemembers Civil Relief Act ("SCRA"), 50 U.S.C. App. §§501-596 was enacted to help reduce this impact.

2.      SCRA's stated purposes are "to provide for, strengthen, and expedite the national defense through protection . . . of servicemembers . . . to enable such persons to devote their entire energy to the defense needs of the Nation . . .." 50 U.S.C. App. §502(1) and to "provide for the temporary suspension of judicial and administrative proceedings and transactions that may adversely affect the civil rights of service members during their military service." 50 U.S.C. App. §502(2).

3.     Among the protections it provides, SCRA empowers the courts to stay the sale, foreclosure or seizure of a servicemember's home or other property by a lender, mortgage holder, or a party that services mortgages.  50 U.S.C. App. §533(b).

4.     Moreover, unless a servicemember waives his or her rights in a separate writing pursuant to 50 U.S.C. App. §517, a sale, foreclosure, or seizure cannot take place during or within a grace period[1] after the servicemember's period of "military service" and "shall not be valid" except "upon a court order granted before such sale, foreclosure, or seizure with a return made and approved by the court . . . ."    50 U.S.C. App. §533(c)(1).  A knowing failure to comply with §533 is a misdemeanor punishable by fine and/or imprisonment.  50 App. U.S.C. §533(d).

5.     In effect, no foreclosure by advertisement (in non-judicial foreclosure jurisdictions) can go forward without such a court order and no foreclosure sale performed in contravention to § 533 is valid.   In jurisdictions which require judicial foreclosure a motion requesting such an order constitutes a "civil action or proceeding" within the meaning of 50 App. U.S.C. §521(a). Regardless of type of jurisdiction, if the servicemember does not appear to contest the motion, it must be accompanied by an affidavit "showing necessary facts to determine whether or not the defendant is in military service."  50 App. U.S.C. §521(b).

6.     Defendant has failed to comply with SCRA, and thus has deprived America's fighting men and women of an essential financial safeguard.  Despite the clear

---

[1] The grace period was 90 days under SCRA beginning December 19, 2003 until it was expanded on July 30, 2008. From that point and going forward to date, the grace period has been nine months following active duty.

prohibitions of SCRA, 50 U.S.C. App. §§501-597b, Defendant has foreclosed on servicemembers' home mortgages while the servicemembers were still on active duty, and has evicted them and their families from their homes without ever giving them a chance to seek a judicial stay of the proceedings.  Central to Defendant's misconduct has been the filing of false and improper affidavits as to the military status of the homeowner.

7.     Philip M. Harry ("Harry") brings this class action on behalf of himself and other similarly situated servicemembers who have been or will be injured by Defendant's failure to promptly and fully comply with the requirements of SCRA.

## PARTIES

8.     Mr. Harry is a Minnesota resident.  He was at all times herein relevant a member of the Minnesota Army National Guard.  He received military orders dated April 15, 2008 calling him up for "military service" within the meaning of 50 App. U.S.C. § 511(2)(A)(ii).   As part of his military service, he was deployed to Iraq from June 3, 2008 to June 2, 2009.

9.     Defendant HSBC Mortgage Services, Inc. ("HSBC Mortgage" or "HSBC"), with offices in Mettawa, Illinois, is a wholly owned subsidiary of HSBC North America Holdings, Inc. ("HNAH") which has its principal place of business in New York, New York.

10.     HSBC Mortgage owns and/or services hundreds of thousands of home mortgages throughout the United States.

**JURISDICTION AND VENUE**

11.     Mr. Harry is a "service member" as defined in the SCRA, 50 U.S.C. App. § 511(1), and at all times herein relevant was in "military service" as defined in §511(2).

12.     Defendant has systematically violated SCRA, 50 U.S.C. App. § 533(c), by foreclosing on the mortgages of servicemembers while they were in military service, often in combat, or in the grace period following completion of their military service.

13.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

14.     Venue in the United States District Court for the District of Minnesota is proper under 28 U.S.C. §1391 because Defendant routinely conducts business in the state of Minnesota, and thus can be said to "reside" here, and because a substantial part of the events or omissions giving rise to the claims in this action occurred in the State of Minnesota.

**FACTUAL BACKGROUND**

**The Servicemembers Civil Relief Act:**

15.     The Servicemembers Civil Relief Act ("SCRA") was signed into law by President George W. Bush on December 19, 2003.  It is a revision of the Soldier's and Sailor's Civil Relief Act of 1940 ("SSCRA"), and was intended, in part, to ease the economic and legal burdens on military personnel called to "military service" including, but not limited to, Operation Iraqi Freedom.

16.     In addition to the five branches of the service, SCRA protections are also extended to members of the National Guard pursuant to §516(a) of the Act.  §516(a) provides: "A member of a reserve component who is ordered to report for military

service is entitled to the rights and protections [of SCRA] . . . during the period beginning on the date of the member's receipt of the order . . . ." This section acts as a bridge protection for reservists during the time from receipt of order to report for military service until actual military service.

17.    As explained above, SCRA's protections include a requirement that a foreclosure or sale of active duty servicemembers' home mortgages may be made only with an order issued upon notice by a court prior to the sale. 50 App.U.S.C. §533(c). Moreover, an intentional violation of this provision is made a crime punishable by fine or imprisonment. 50 App. U.S.C. § 533(d).

18.    §533 of SCRA does not require the servicemember to provide notice of active duty status to the mortgagee. Instead, the onus is on the party wishing to foreclose on the property to determine whether the borrower is a servicemember in "military service."

19.    The United States Supreme Court has held that SSCRA, the predecessor to SCRA, must be read "with an eye friendly to those who dropped their affairs to answer their country's call." *Le Maistre v. Leffers*, 333 U.S. 1, 6, 68 S. Ct. 371, 373 (1948). Although the statute has been amended, the Court's logic continues to apply.

20.    50 App. U.S.C. §597a provides that "any person" aggrieved by a violation of SCRA may recover in a civil action "appropriate equitable or declaratory relief, "all other appropriate relief, including monetary damages," and "costs of the action, including a reasonable attorney fee."

21.     Nothing under §597a "shall be construed to preclude or limit any remedy otherwise available under other law, including consequential and punitive damages."  50 App. U.S.C. § 597b.

22.     Mr. Harry, at all times herein relevant, including but not limited to the period of training at Camp Ripley, was also in "state active service" as defined in Minn. Stat. §190.05, Subd. 5a. Pursuant to Minn. Stat. §190.055, he was entitled to all the protections provided by SCRA as well as additional state protections.   One of those additional state protections is freedom from service of process while on active duty. Minn. Stat. § 192.25. (Exemption from Process, "No member of the guard shall be arrested, or served with any summons, order, warrant or other civil process after having been ordered to any duty or while going to, attending or returning from any place to which the member is required to go for military duty . . . .").

**Plaintiff's Loan:**

23.     On or about Feb. 28, 2005, Mr. Harry closed on a mortgage for a home located at 4522 James Ave. N., Minneapolis, Minnesota.  The mortgage was held in the name of Mortgage Electronic Registration Systems (MERS) and later assigned to HSBC Mortgage.

24.     At all times herein relevant, Mr. Harry was a member of the Minnesota Army National Guard.

25.     Prior to March 25, 2008, Mr. Harry received training orders to report to Camp Ripley. On April 15, 2008, he received an order to report for active duty.  He reported to Fort Sill, Oklahoma for training in preparation for his unit's deployment in

support of Operation Iraqi Freedom.  After his training in Fort Sill, he deployed to Iraq,
where he served until June 2, 2009, attaining the rank of Staff Sergeant.  During his tour
of duty, he earned and received the Army Commendation Medal, the Army Achievement
Medal, the National Defense Service Medal, the national Terrorism Service Medal, the
Army Overseas Service Ribbon, and the Armed Forces Reserve Medal.

26.     By Notice of Mortgage Foreclosure Sale dated April 15, 2008, HSBC
Mortgage commenced foreclosure by advertisement proceedings on Mr. Harry's home.
Upon information and belief, Defendant retained Reiter & Schiller, P.A. to conduct the
foreclosure. Reiter & Schiller hired one William Miller to serve a notice of sheriff's sale
upon the Plaintiff.  According to Defendant's affidavit, Miller attempted service on Mr.
Harry at his home on April 21, 2008. He was not at home.  Mr. Harry received no notice
of the pending foreclosure. Interestingly, Mr. Miller's affidavit was not notarized until
June 3, 2008.

27.     Prior to reporting for training, and later for deployment, Mr. Harry lived in
his home.  Furthermore, Mr. Harry fully intended to return to his home and reside there
when he returned from his deployment to Iraq.

28.      HSBC Mortgage caused a sheriff's sale of the mortgaged property to be
held on June 4, 2008. HSBC purchased Mr. Harry's home at the sheriff's sale   for
$32,602.15.   The county tax assessed value of the home at the time of the sale was
$141,000.   The sale was held without Mr. Harry's knowledge.   On June 3, 2008, an
associate of the firm of Reiter & Schiller, P.A. executed and later filed an affidavit,
purporting to be upon personal knowledge, stating that, after "inquiry by" unidentified

"agents of the mortgagee," Mr. Harry "was not in the military or naval service of the United States." See affidavit attached hereto as Exhibit A. Such affidavit was factually incorrect. It was made without personal knowledge of the facts and in reckless disregard of its truth or falsity. Not only was the affidavit false but, had HSBC Mortgage or its agents checked easily available public records maintained by the Department of Defense, it would have known that it was false. Furthermore, Defendant made no attempt to determine Mr. Harry's military status in any other way, including by contacting him directly.

29.     Mr. Harry first learned of the foreclosure when his mail was forwarded to him in Iraq by his parents several months later.

30.     The actions of HSBC Mortgage are in direct violation of SCRA.

31.     As a result of HSBC Mortgage's illegal actions, Mr. Harry lost the use and occupation of his home, various items of personal property stored in his home pending his return from military service, and the equity he had built up in the home. He also incurred significant unwarranted damage to his credit rating, which adversely impacted his ability to obtain replacement housing, and suffered significant emotional distress.

## CLASS ACTION ALLEGATIONS

32.     Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(a), b(2), and b(3), on behalf of the following Class:

> All servicemembers with mortgages originated before the period of the servicemember's military service who, within the statute of limitations as extended or tolled by any period of military service:

8

(1)     were on active duty military service, as defined in 50 U.S.C. App. § 511(2), or had the protections of SCRA under §516, or were within the grace period under §533; and

(2)     whose property was foreclosed or sold by, or on behalf of, Defendant without a prior court order as required by 50 U.S.C. App. § 533, or with a court order that was not based on a correct affidavit regarding military service status ("the Class").

The Class does not include servicemembers who executed a valid written waiver of the rights and protections provided under SCRA (*see* §517).

33.     This class action satisfies all requirements of Fed. R. Civ. P. 23(a), (b)(2), and (b)(3), including, but not limited to numerosity, commonality, typicality, adequacy, and predominance.

34.     **Numerosity:** Consistent with Fed. R. Civ. P. 23(a)(1), the proposed class "is so numerous that joinder of all members is impracticable."  During the relevant time period, the United States of America had approximately 1.5 million active-duty servicemembers (with a segment of that number coming into and some going out of active duty status).  On April 13, 2011, HSBC Mortgage's parent, HSBC North America Holdings, Inc. ("HNAH"), entered into a Consent Order with Board of Governors Federal Reserve System ("Federal Reserve"), *In the Matter of HSBC NORTH AMERICA HOLDINGS, INC, and HSBC FINANCE CORPORATION,* Bd. of Gov. of Fed. Res. System, Washington, D.C., Docket No. 11-022-B-HC, 11-022-B-DEO (April 13, 2011). This Consent Order stipulated that HNAH "through the Bank and the Mortgage Servicing Companies, is the twelfth largest servicer of residential mortgages in the United States and services a portfolio of 892,200 residential mortgage loans.  During the recent

financial crisis, a substantially larger number of residential mortgage loans became past due than in earlier years.  Many of the past due mortgages have resulted in foreclosure actions.  From January 1, 2009 to December 31, 2010, the Mortgage Servicing Companies initiated 43,442 foreclosure actions."  The Federal Reserve alleged that HNAH's "Mortgage Servicing Companies" had engaged in numerous illegal activities: filing affidavits in state courts "based on personal knowledge or based on a review by the affiant of the relevant books and records, when, in many cases, they were not based on such knowledge or review;" "failed to respond in a sufficient and timely manner to the increased level of foreclosures by increasing financial, staffing, and managerial resources to ensure that the Mortgage Servicing Companies adequately handled the foreclosure process;" "failed to have adequate internal controls, policies and procedures, compliance risk management, internal audit, training, and board oversight of the foreclosure process, including sufficient oversight of outside counsel … handling foreclosure related services … ."  The Consent Order stipulated that "it is the common goal of the Board of Governors, the Reserve Bank, HNAH, and the Mortgage Servicing Companies to ensure that the Mortgage Servicing Companies operate … in compliance with the terms of mortgage loan documentation and related agreements with borrowers, all applicable state and federal laws (including the U.S. Bankruptcy Code and the Servicemembers Civil Relief Act) … ."  The parties to the Consent Order further stipulated that "after the conduct set forth above became known, HNAH and the Mortgage Servicing Companies have been taking steps to remediate the filing of and reliance on inaccurate affidavits in foreclosure and bankruptcy proceedings … ."  As part of the Consent Order, HNAH

agreed to initiate an "independent review of certain residential mortgage foreclosure actions … to determine ... whether the foreclosure was in accordance with applicable state and federal laws, including but not limited to, the Servicemembers Civil Relief Act … ."  As part of that review process, Ernst & Young, LLP executed an engagement letter with HNAH dated September 28, 2011 ("Letter").   Among other things, the Letter, in Appendix C, detailed a Foreclosure Review Methodology which included a Core Sample of the Population Segmentation which focused on Higher Risk Segments defined as "Foreclosure actions performed by attorney firms with: a high volume of actions, a terminated business relationship with HSBC or governmental agencies or significant audit findings by HSBC (the 'High-risk Attorney Firms.')"   For the time period of the review, January 1, 2009 through December 31, 2010, the review states, "Foreclosure actions where HSBC records indicate the borrower was subject to SCRA protection. Foreclosure actions in this segment are considered 'higher-risk' due to the potential of a failure to comply with SCRA regulations.  There are a total of 87 foreclosure actions with a SCRA identification."   More detailed information on the Class can be ascertained through the review of account records maintained by HSBC Mortgage, publicly available records, and appropriate discovery.   Given the foregoing, the number of potential class members can be extrapolated to be at least in the hundreds. Further, given the geographical dispersion of the numerous current and former active-duty servicemembers whose mortgages were foreclosed by HSBC, joinder would be impracticable if not impossible.

35.     **Commonality and Predominance:** Common questions of law and fact

exist as to all members of the Class and predominate over any questions affecting solely

individual class members.  These questions include:

(1)     Whether Defendant has in the past and continues to improperly foreclose
        on the mortgages of active duty servicemembers, including those foreclosed
        upon following their completion of active duty;

(2)     Whether the agents of Defendant regularly executed factually incorrect
        affidavits in support of foreclosures concerning military status without
        personal knowledge thereof or with reckless disregard of the truth or falsity
        thereof.

36.     **Adequacy:** Consistent with Fed. R. Civ. P. 23(a)(4), Plaintiff "will fairly

and adequately protect the interests of the class."  Plaintiff has no adverse or conflicting

interests to the proposed class members.   He has retained counsel competent and

experienced in complex class action litigation, and specifically in SCRA litigation, who

possess the necessary financial resources to adequately and vigorously litigate this class

action.

37.     **Superiority:** A class action is superior to all other available methods for

the fair and efficient adjudication of this controversy because joinder of all members is

impractical.  Prosecution of separate actions by individual class members would create an

inherent risk of inconsistent and varying adjudications, with the concomitant risk of the

establishment of incompatible and conflicting standards of conduct for Defendant.

Furthermore, the expense and burden of individual litigation makes it impossible for

members of the class to individually redress the wrongs done to them.  Significantly, the

class members are servicemembers, a number of whom are still on active duty, and their

energies should not have to be devoted to litigating their individual cases against Defendant. SCRA's stated purpose is "to provide for, strengthen, and expedite the national defense through protection extended by th[e] Act to servicemembers of the United States to enable such persons to devote their entire energy to the defense needs of the Nation" 50 U.S.C. App. § 502. Bringing this case as a class action furthers that purpose. Plaintiff knows of no difficulty that would make a class action in this case unmanageable.

**CAUSES OF ACTION**

**COUNT I**
**VIOLATION OF SCRA**

38.     Plaintiff re-alleges all prior paragraphs of this Complaint.

39.     As described above, the actions of HSBC violate the SCRA limits on foreclosure, thus entitling the Plaintiff and members of the plaintiff Class, pursuant to 50 U.S.C. App. § 597a, to appropriate declaratory and/or injunctive relief, and to recover monetary damages, punitive damages, other appropriate relief, costs of the action, and attorney's fees.

40.     As a result of HSBC Mortage's illegal conduct, Plaintiff and members of the plaintiff Class have lost their homes and their equity therein as a result of illegal and precipitous foreclosures, incurred additional and unwarranted expense when attempting to redeem or re-instate their mortgages, suffered unwarranted damage to their credit ratings as a result of foreclosure, and otherwise suffered severe economic hardship and emotional distress.

41.     Plaintiff, as well as members of the plaintiff Class whose mortgages have been foreclosed or are in the process of being foreclosed, are entitled to declaratory relief finding those foreclosures to be null and void, an injunction against further proceedings, and an award of damages.

## COUNT II

## CONVERSION

42.     Plaintiff realleges all prior allegations of this Complaint.

43.     Defendant has taken property belonging to Plaintiff and members of the Class without legal right or claim.  Such conduct constitutes conversion by Defendant of Plaintiff's and plaintiff Class's property.

44.     As a result of said conversion, Plaintiff and the plaintiff Class have been deprived of their property and been damaged thereby.

## RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself and all others similarly situated, respectfully requests the following relief from this Court:

1.     Certify this case as a class action on behalf of the proposed Class as defined herein;

2.     Appoint the named Plaintiff as class representative;

3.     Appoint the undersigned counsel as counsel for the Class;

4.     Grant judgment on Count I in favor of the Plaintiff and members of the Class declaring Defendants' foreclosure policies and practices as well as

their servicing practices as described above to be in violation of SCRA and awarding Plaintiff and the class the damages suffered as a result thereof.

5.      Grant judgment on Count II in favor of the Plaintiff and members of the class declaring that Defendant has converted their property and awarding them the damages suffered as a result thereof.

6.      Enjoin the Defendant from continuing to engage in the above described conduct in the future;

7.      Declare the foreclosures accomplished in violation of the above-cited statutes to be null and void and order the Defendant to take all necessary steps to revest title in the Plaintiff and members of the Class.

8.      Award the Plaintiff and the Class punitive damages;

9.      Award the Class prejudgment interest at the applicable rate;

10.      Award the Class all direct and consequential damages allowed by law;

11.      Award the Class all appropriate equitable and injunctive relief;

12.      Award the Class their reasonable costs and attorney's fees; and

13.      Grant any other further relief that the Court deems appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff and the plaintiff Class demand a jury trial in this action for all claims so triable.

Dated:  April 20 , 2012           Respectfully Submitted,

**CROWDER TESKE, PLLP**

By:  /s/ Vildan A. Teske

William H. Crowder (MN Bar No. 20102)
Vildan A. Teske (MN Bar No. 241404)
Marisa C. Katz (MN Bar No. 389709)
Colleen Daly (MN Bar No. 386510)
222 South Ninth Street
Suite 3210
Minneapolis, Minnesota  55402
Telephone: (612) 746-1558
crowder@crowderteske.com
teske@crowderteske.com
katz@crowderteske.com
daly@crowderteske.com

Richard J. Fuller (MN # 032669)
Attorney at Law
400 South Fourth Street, Suite 202
Minneapolis, Minnesota 55402
Telephone: (612) 294-2600
rfuller@schaeferlaw.com


**SCHAEFER LAW FIRM, LLC**

Bert Black, of counsel (MN # 345042)
Douglas L. Micko (MN #299364)
400 South Fourth Street, Suite 202
Minneapolis, Minnesota 55415
(612) 294-2600
bblack@schaeferlaw.com
dmicko@schaeferlaw.com

**ATTORNEYS FOR PLAINTIFF
AND THE CLASS**